UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARLON SPAULDING, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | NO. 3:09CV1624 (MRK) |
| : | |
| ALEJANDRO MAYORKAS and : | |
| BRIAN FIGEROUX, : | |
| : | |
| Defendants. : | |

## RULING AND ORDER

This case reveals once more, as the Second Circuit recently described it, "the exceptionally poor quality of representation often provided by attorneys retained by aliens as they attempt to negotiate the complexities of our immigration law." *United States v. Cerna*, --- F.3d ---, 2010 WL 1659264, at *1 (2d Cir. 2010). Plaintiff Marlon Spaulding, incarcerated and currently proceeding *pro se* and *in forma pauperis*, has filed suit against Defendant Alejandro Mayorkas, Director of the United States Citizenship and Immigration Services ("CIS"). Mr. Spaulding seeks judicial review of CIS's denial of his Application for a Certificate of Citizenship. *See* Am. Compl. [doc. # 9]. Mr. Mayorkas has moved under Rule 12(b)(1) of the *Federal Rules of Civil Procedure* for an order of dismissal, arguing that this Court lacks subject matter jurisdiction to review the agency decision because Mr. Spaulding did not exhaust his administrative remedies, as required by 8 U.S.C. § 1503(a). *See* Def.'s Mot. to Dismiss [doc. # 16]. Mr. Spaulding concedes that he did not appeal CIS's initial denial of his Application for a Certificate of Citizenship, but he says that this is because the attorney he paid to file the appeal, Defendant Brian Figeroux – who waived service of process, but who has not yet appeared to defend this action – inexplicably failed to do so. *See* Am. Compl. [doc. # 9]. For the reasons

1

explained below, the Court concludes that Mr. Spaulding's failure to exhaust means that this Court lacks subject matter jurisdiction, and therefore Defendant Mayorkas's Motion to Dismiss [doc. # 16] is granted. Accordingly, Mr. Spaulding's claim against Mr. Mayorkas is dismissed, but without prejudice to Mr. Spaulding re-filing this action after he has exhausted his administrative remedies by filing a motion to reopen with CIS. Mr. Spaulding's claim against Mr. Figeroux remains, at least for the time being.

## I.

The following facts are taken from the Amended Complaint [doc # 9] and related filings;[1] unless other indicated, they have not been disputed. Mr. Spaulding, a native of Jamaica, entered the United States as a lawful permanent resident ("LPR") in July 1987 at the age of 11. He arrived with his mother, Jennifer Spaulding, and his 9 year-old brother, Omar, both of whom were also LPRs. On January 7, 1994 – when Mr. Spaulding was 17 and his brother was 15 – Jennifer Spaulding became a naturalized citizen of this country. A number of years later, in September 2005, Ms. Spaulding hired attorney Brian Figeroux of the Brooklyn law firm Figeroux & Associates to file Applications for Certificates of Citizenship[2] on behalf of her two sons. The applications requested that CIS recognize that Marlon and Omar had derived United States citizenship through the naturalization of their mother while they were still minors. In October 2005, Mr. Figeroux filed virtually-identical applications for the two brothers – who, after all, had virtually identical circumstances. *See* Ex. A to Am. Compl. [doc. # 9]. From that point forward, however, the brothers' attempts at securing U.S. citizenship diverged.

---

[1] The Court may look to evidence beyond the pleadings to determining whether to dismiss a case under Rule l2(b)(1). *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[2] The Application is also known by its form number, "N-600."

By late December 2005, Omar Spaulding had received his Certificate of U.S. Citizenship, meaning that CIS had determined that he was entitled to derivative citizenship on the basis of his mother's naturalization.  *See* Ex. A to Am. Compl. [doc. # 9]; *see also* 8 U.S.C. § 1432 *repealed* by the Child Citizenship Act ("CCA") of 2000, Pub. L. 106-395, Title I, § 103(a), Oct. 30, 2000, 114 Stat. 1632, *codified at* 8 U.S.C. § 1431.[3]  However, it was not until receiving a letter dated July 19, 2006 that Marlon Spaulding was notified that his application for a certificate of derivative citizenship had been denied.  *See* CIS Notice of Decision, Ex. B to Am. Compl. [doc. # 9].  The Notice of Decision – which was also sent to Mr. Figeroux – stated that Mr. Spaulding could appeal the decision, but that he had to do so within 33 days or else the decision would become final.  *See id.* at 1.  Enclosed with the letter was the appropriate form for noticing an appeal to the Administrative Appeals Office (AAO).  Less than three weeks later, Jennifer Spaulding returned to the offices of Figeroux & Associates, paying Brian Figeroux $750 to appeal the adverse determination of Marlon Spaulding's application.  *See* Customer Receipt dated Aug. 8, 2006 and Aff. of Jennifer Spaulding, Ex. C to Am. Compl. [doc. # 9]; Letter dated July 19, 2009 from Jennifer Spaulding, Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss [doc. # 22].

Despite being paid to do so, however, Mr. Figeroux never filed the appeal.  Worse, he apparently did not inform Mr. Spaulding of this fact for some eighteen months – and even then, only when confronted by Ms. Spaulding.  *See* Am. Compl. [doc. # 9] at 5 ("After a year and a half of call and calling the office of Figeroux [&] Associates, my mother finally confronted a

---

[3] Although Congress repealed 8 U.S.C. § 1432 with the passage of the CCA in 2000, it still applies to Mr. Spaulding's claim because it was "in effect when [he] [allegedly] fulfilled the last requirement of derivative citizenship." *Lewis v. Gonzales*, 481 F.3d 125, 126 n.1 (2d Cir. 2007) (citation omitted, alterations in original).  Unfortunately for Mr. Spaulding, the CCA – under which it appears he would be entitled to derivative citizenship – does not apply retroactively. *Drakes v. Ashcroft*, 323 F.3d 189, 191 (2d Cir. 2003) (per curiam).

representative of [Brian Figeroux's] law office only to be informed no appeal has been filed, and she was not given back the fee of $750.00"); Decl. of Ethan Enzer, Field Office Director of the Hartford, Conn. office for CIS, Ex. D to Mem. in Supp. of Def.'s Mot. to Dismiss [doc. # 16] ¶ 3 ("A review of the record, relevant databases, and the records of the Administrative Appeals Office indicates that no appeal [of the denial of Mr. Spaulding's Application for Certificate of Citizenship] has ever been filed.").

Meanwhile, on April 21, 2006, Mr. Spaulding pleaded guilty before Judge Stefan Underhill of this Court to one count of conspiracy to possess with the intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. *See* Plea Agreement, *United States v. Marlon Spaulding*, No. 05CR239 (D. Conn. Apr. 21, 2006). After accepting his plea, Judge Underhill ordered the U.S. Probation Office to prepare a Presentence Investigation and Report. *See* 18 U.S.C. § 3552(a); Fed. R. Crim. Proc. 32(c)-(d). That Report apparently indicated that Mr. Spaulding was a non-citizen, to which Mr. Spaulding, through his criminal defense attorney, objected. *See* Def. Marlon Spaulding's Mem. in Aid of Sentencing, No. 05CR239 (D. Conn. July 17, 2007) at 3 ("Defendant insists that he is a citizen of the United States despite certain contentions to the contrary and the assertion in . . . the Presentence Report"). Judge Underhill ultimately sentenced Mr. Spaulding on July 25, 2007 to the mandatory minimum sentence of 120 months imprisonment. *See* Judgment in a Crim. Case, No. 05CR239 (D. Conn. July 25, 2007); *see also* Order, *United States v. Spaulding*, No. 07-3252-cr (2d Cir. Oct. 15, 2008) (dismissing Mr. Spaulding's appeal of his sentence as barred by the waiver of appellate rights contained in his plea agreement). Mr. Spaulding is currently serving that sentence in the Federal Correctional Institution in Otisville, New York; he is projected to complete his sentence in May 2014. *See* Ex. E to Def.'s Resp. to Apr. 9, 2010 Order [doc. # 27].

Mr. Spaulding filed the case currently before the Court on or about March 10, 2009 in the United States District Court for the Southern District of New York. *See Spaulding v. Neufeld*, No. 09cv5694 (S.D.N.Y.). In his original complaint, Mr. Spaulding named as a defendant only Donald Neufeld, the now-former Director of CIS,[4] and requested as relief the grant of a Certificate of Citizenship. *See* Compl. [doc. # 8]. On June 22, 2009, Chief Judge Loretta Preska of the Southern District of New York granted Mr. Spaulding's motion to proceed *in forma pauperis*, but ordered him to file an amended complaint with additional facts from which she could determine: (1) where venue is appropriate; and (2) whether Mr. Spaulding had exhausted his administrative remedies. *See* Order, *Spaulding v. Neufeld*, No. 09cv5694 (S.D.N.Y. June 22, 2009).

Mr. Spaulding filed his Amended Complaint on or about August 2, 2009. *See* Am. Compl. [doc. # 9]. Among other changes, it explained the circumstances recited above regarding why he had not appealed the initial denial of his application; indicated that his pre-incarceration residence was in Danbury, Connecticut; and added Brian Figeroux as a defendant, requesting as relief from him a formal letter of apology and reimbursement of the $750 Mr. Figeroux was paid to file Mr. Spaulding's appeal. *See id.* Chief Judge Preska then transferred the case to this Court under 28 U.S.C. § 1406(a) based on Mr. Spaulding's pre-incarceration residence in this District. *See* Order dated Sept. 29, 2009 [doc. # 7].

Thereafter, on February 4, 2010, Defendant Mayorkas filed the now-pending Motion to Dismiss, arguing that the Court lacks subject matter jurisdiction due to Mr. Spaulding's admitted failure to exhaust his administrative remedies. *See* Mot. to Dismiss [doc. # 16]. Mr. Mayorkas

---

[4] Alejandro Mayorkas is the current Director of CIS. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, he has been substituted for Mr. Neufeld.

also argues that Mr. Spaulding has not met the requirements under *Yang v. Gonzales*, 478 F.3d 133, 142 (2d Cir. 2007) and *Lozada v. INS*, 857 F.2d 10 (1st Cir. 1988) for asserting an ineffective assistance of counsel claim, principally because he has not filed a complaint with any disciplinary authority for Mr. Figeroux's failure to file the appeal on Mr. Spaulding's behalf. *See* Def.'s Mem. in Supp. of Mot. to Dismiss [doc. # 16] at 10-11. Finally, Mr. Mayorkas argues that even if this Court has jurisdiction, Mr. Spaulding has not demonstrated that he is entitled to a Certificate of Citizenship under the law governing his application, the now-repealed 8 U.S.C. § 1432. Mr. Spaulding's principal argument in opposition is to assert that the fact that his brother, Omar, was granted a Certificate of Citizenship under identical circumstances demonstrates that he, too, is entitled to a Certificate. *See* Pl.'s Resp. to Mot. to Dismiss [doc. # 22]. In reply to that argument, Mr. Mayorkas argues, in essence, that the approval of Omar's application was in error. *See* Def.'s Mem. in Reply [doc. # 24].

To better determine whether it had jurisdiction over Mr. Spaulding's claim, on April 9, 2010, the Court issued an order requesting additional information from the parties regarding Mr. Spaulding's incarceration and whether he was presently in removal proceedings. *See* Order [doc. # 25]. In addition to the factual circumstances already discussed, the responses indicated that Mr. Spaulding is neither subject to an order of removal nor currently in removal proceedings. *See* Def.'s Resp. [doc. # 27]. He is, however, currently subject to a detainer issued by Immigration and Customs Enforcement ("ICE"), which asks the Federal Correctional Institution in Otisville to notify ICE at least 30 days prior to Mr. Spaulding's release. The detainer also states that "[f]ederal regulations (8 C.F.R. [§] 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for ICE to assume custody of the alien." *See* Detainer, Ex. G to Def.'s Resp. [doc. # 27]; 8

C.F.R. § 287.7 ("The detainer is a *request* that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody….") (emphasis added); *see also* Christopher N. Lasch, *Enforcing the Limits of the Executive's Authority to Issue Immigration Detainers*, 35 Wm. Mitchell L. Rev. 164 (2008) (discussing immigration detainers in depth).

## II.

There are only two ways that an individual, such as Mr. Spaulding, can seek judicial review of a derivative citizenship claim. *See Henriquez v. Ashcroft*, 269 F. Supp. 2d 106, 107-08 (E.D.N.Y. 2003); *Hutchinson v. Mukasey*, No. 07CV10716, 2007 WL 4323006, at *2 (S.D.N.Y. Dec. 10, 2007). First, under 8 U.S.C. § 1252(b)(5), if the individual is in removal (formally known as "deportation") proceedings or is subject to a final order of removal, he may petition the appropriate federal court of appeals for adjudication of his claim to U.S. nationality. *See Henriquez*, 269 F. Supp. 2d at 108; *see also Jean Pierre v. Ashcroft*, No. 03CV3825, 2003 WL 22520005 (E.D.N.Y. Nov. 6. 2003) (transferring a petition to the Second Circuit Court of Appeals because it asserted a citizenship claim that arose during removal proceedings). Administrative exhaustion is not required to seek judicial review via this path. *See Poole v. Mukasey*, 522 F.3d 259, 264 (2d Cir. 2008). If the court of appeals determines that there are no disputed issues of material fact, it decides the nationality claim. *See* 8 U.S.C. § 1252(b)(5)(A); *Langhorne v. Ashcroft*, 377 F.3d 175 (2d Cir. 2004). If, on the other hand, there are disputed facts that are material to the claim, the case is transferred to an appropriate district court for adjudication of the issue in the first instance. *See* 8 U.S.C. § 1252(b)(5)(B); *Azize v. Citizenship and Immigration Servs.*, 594 F.3d 86, 91 (2d Cir. 2010); *Nana Osei Bonsu v. Holder*, 646 F. Supp. 2d 273 (D. Conn. 2009) (considering a claim of derivative citizenship following transfer

from the Second Circuit Court of Appeals).

The second way that an individual can seek judicial review of a claim to U.S. citizenship is through 8 U.S.C. § 1503(a), which applies only if the claim did not "ar[i]se by reason of, or in connection with any removal proceeding" and is not "in issue in any such removal proceeding." 8 U.S.C. § 1503(a); *Henry v. Quarantillo*, --- F. Supp. 2d. ---, 2010 WL 447385, at *5-6 (E.D.N.Y. Feb. 2, 2010) (discussing "when a § 1503(a) claim to citizenship, made after citizenship was placed in issue in removal proceedings, is far enough removed from those proceedings so as not to have arisen 'in connection with' them."). This avenue of judicial review is only available if the individual already applied to CIS for a Certificate of Citizenship and had that claim denied both in the first instance and on appeal to the Administrative Appeals Office. *See* 8 U.S.C. § 1503(a) ("An action under this subsection may be instituted only within five years after the final administrative denial of [the application] . . . ."); *see also* 8 C.F.R. § 322.5(b) (explaining the appeal procedures). "Only after a certificate of citizenship is denied following this administrative procedure does the district court have jurisdiction to determine citizenship." *Barham v. United States*, No. CV993983, 1999 WL 1092560 at *2 (E.D.N.Y. Nov. 30, 1999).

In opposition to the Motion to Dismiss, Mr. Spaulding seems to argue that this Court has jurisdiction under 8 U.S.C. § 1252(b)(5) – the first avenue described above. *See* Pl.'s Resp. to Def./Government Mot. [doc. # 22] at 2-4. In particular, it appears possible that Mr. Spaulding misunderstood Chief Judge Preska's transfer of this case from the Southern District of New York to this Court as a transfer either to or from the Second Circuit under 8 U.S.C. § 1252(b)(5). *See id*. at 2. However, as explained above, Chief Judge Preska merely transferred the case here because this is the proper venue for Mr. Spaulding's case, based on his pre-incarceration residence in this District. *See* Order dated Sept. 29, 2009 [doc. # 7]; 8 U.S.C. § 1421(c).

More importantly, Mr. Spaulding is not currently subject to removal proceedings, and therefore 8 U.S.C. § 1252(b)(5) is not available to him as an avenue of judicial review. *See Langhorne*, 377 F.3d at 177; *Quarantillo*, 2010 WL 447385 at *5-6. Moreover, even if Mr. Spaulding could proceed through § 1252(b)(5), his petition would have to be presented not to this Court, but to the Second Circuit Court of Appeals, at least in the first instance; if this Court believed that the Second Circuit would find jurisdiction, it would transfer this case to it, as other courts routinely do. *See, e.g.*, *Jean Pierre*, 2003 WL 22520005 at *3; *see also Boyd v. Immigration and Customs Enforcement*, 344 F. Supp. 2d. 869, 872 (E.D.N.Y. 2004) ("When a claim of citizenship arises in the context of a removal proceeding, original jurisdiction lies in the Court of Appeals exclusively."). But given that Mr. Spaulding is neither in removal proceedings nor subject to an order of removal, transferring this case to the Second Circuit is not warranted.

Accordingly, if Mr. Spaulding is entitled to judicial review of the denial of his Application for a Certificate of Citizenship, it must be through 8 U.S.C. § 1503(a). As already discussed, § 1503(a) only vests jurisdiction in a district court after administrative remedies have been exhausted. As Mr. Spaulding concedes, he has not exhausted his administrative remedies. The Court understands that this was through no fault of Mr. Spaulding, and is sympathetic to the situation that Mr. Spaulding finds himself in as a result of Mr. Figeroux's apparent negligence and/or unethical behavior. The Court is also aware that, under certain circumstances, the Second Circuit has indicated a willingness to overlook administrative exhaustion requirements in the immigration law context, particularly when it is due to the ineffective assistance of counsel. *See, e.g.*, *Cerna*, 2010 WL 1659264, at *9 (holding that hold that "ineffective assistance of counsel can be grounds for excusing the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1)"); *cf. Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 121-22 (2d Cir. 2007) (holding

9

that the failure to exhaust individual *issues* before the Board of Immigration Appeals does not deprive the Court of Appeals of subject matter jurisdiction to consider those issues), *reh'g denied en banc* 489 F.3d 126 (2d Cir. 2007).

But even assuming that the Court could excuse Mr. Spaulding's failure to exhaust – and the Court is not sure that it could – three factors persuade the Court that it would not be manifestly unjust to require Mr. Spaulding to exhaust his administrative remedies in this case. First, since Mr. Spaulding is neither in removal proceedings nor subject to an order of removal, he is in no immediate danger of being removed from this country. Second, Mr. Spaulding is not projected to be released from federal criminal custody for approximately four years. This should be more than adequate time for Mr. Spaulding to exhaust his administrative remedies and, if need be, return to this Court for judicial review of his claim to citizenship well before removal proceedings are initiated. Third and finally, the requirements for Mr. Spaulding to exhaust here are not particularly onerous, and, in fact, could afford him the relief he seeks.

In order to administratively exhaust, Mr. Spaulding need only file a motion to reopen with CIS. In this case, that would involve Mr. Spaulding submitting Form I-290B, explaining in it the manner in which his former attorney, Mr. Figeroux, was ineffective. As Mr. Mayorkas points out, *see* Mem. in Supp. of Def.'s Mot. to Dismiss [doc. # 16] at 3, a petitioner seeking relief based on ineffective assistance of counsel must submit:

> (1) an affidavit setting forth in detail the agreement with former counsel concerning what action would be taken and what counsel did or did not represent in this regard; (2) proof that the [petitioner] notified former counsel of the allegations of ineffective assistance and allowed counsel an opportunity to respond; and (3) if a violation of ethical or legal responsibilities is claimed, a statement as to whether the [petitioner] filed a complaint with any disciplinary authority regarding counsel's conduct and, if a complaint was not filed, an explanation for not doing so.

*Yang v. Gonzales*, 478 F.3d 133, 142 (2d Cir. 2007) (citation omitted, alterations in original). Mr. Spaulding has already fulfilled the first two of these requirements. The Amended Complaint, which states that Mr. Figeroux did not file the appeal despite being paid to do so, was signed under penalty of perjury, *see* Am. Compl. [doc. # 9]; and Mr. Figeroux was provided a copy of the Amended Complaint and waived service of process, *see* Waiver of Service Returned Executed [doc. # 29], but has not appeared or otherwise responded to its allegations. To fulfill the last requirement of *Yang*, the only extra step that Mr. Spaulding must do is to file a complaint with the grievance committee for the state bar association of which Mr. Figeroux is a member.[5]

Finally, while Mr. Mayorkas argues, in essence, that a motion to reopen with the CIS would be futile since Mr. Spaulding is not entitled to a Certificate of Citizenship, *see* Mem. in Supp. of Def.'s Mot. to Dismiss [doc. # 16] at 5-6 nn.9-10, it appears to this Court that there are at least factual disputes about whether that is true. Mr. Mayorkas's argument is based principally on the first part of 8 U.S.C. § 1432, which requires one of the following to occur prior to the child's 18th birthday:

> (1) The naturalization of both parents; or
> 
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> 
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; . . . .

8 U.S.C. § 1432(a) (repealed 2000). Here, both of Mr. Spaulding's parents are living, and his father has not yet become a naturalized U.S. citizen, thereby precluding (1) and (2). And while Mr. Spaulding was apparently born out of wedlock, his parents married when he was 13 years

---

[5] There is a hefty fee for filing a motion to reopen with CIS ($585), but CIS does waive the fee in appropriate circumstances. See 8 C.F.R. § 103.7(c)(5)(i) (discussing the requirements for a waiver of fees).

old, which would seem to preclude (3) as well, if that marriage constituted "legitimation."

However, Mr. Spaulding has made assertions in his Memorandum in Opposition [doc. # 22] and Reply Memorandum [doc. # 26] that suggest that even though his parents were married, they were legally separated prior to his 18th birthday, with his mother having legal custody. If true, that could satisfy the first prong of 8 U.S.C. § 1432(a). *See Jimenez v. U.S. Immigration Serv.*, 197 Fed. Appx. 87, 88-89 (2d Cir. 2006) (summary order) ("To be eligible for derivative citizenship under former [8 U.S.C. § 1432] . . . a petitioner whose parents are living and married must show that both of his parents naturalized before his eighteenth birthday, unless he can prove that his parents were legally separated."). Moreover, though his parents' marriage would likely mean Mr. Spaulding was "legitimated" within the common understanding of *this* country, "[i]n determining whether a petitioner's paternity was established by legitimation, the Court looks to the law of the jurisdiction where [the petitioner] was born." *Anrkah v. Gonzalez*, No. 06CV0554, 2007 WL 2388743, at *1 (D. Conn. July 21, 2007); *see also Nana Osei Bonsu v. Holder*, 646 F. Supp. 2d 273, 278 (D. Conn. 2009); *Gosira v. Loy*, 357 F. Supp.2d 453, 459 (D. Conn. 2005), *reconsidered on other grounds*, *Gosira v. Chertoff*, 364 F. Supp. 2d 230 (D. Conn. 2005); *Matter of Rowe*, 23 I & N Dec. 962 (BIA 2006). The Court is not attempting in any way to circumscribe CIS's inquiry in considering a motion to reopen from Mr. Spaulding, but if it does reach the merits of Mr. Spaulding's claim to derivative citizenship, these issues would likely be important ones for it to consider.

In summary, the Court concludes that while Mr. Spaulding's failure to exhaust was through no fault of his own, there would be no manifest injustice in the particular circumstances of this case in requiring Mr. Spaulding to exhaust his administrative remedies by filing a motion to reopen with CIS. In the event that CIS either (a) denies Mr. Spaulding's motion to reopen; or

(b) grants the motion to reopen, but then denies Mr. Spaulding's appeal on its merits, Mr. Spaulding can immediately seek this Court's review (pursuant to 8 U.S.C. § 1503(a)) by filing a petition to review CIS's action.  *See Quarantillo*, 2010 WL 447385, at *5-6; *Henriquez*, 269 F. Supp. 2d at 108.  In the interim, however, this Court lacks subject matter jurisdiction over Mr. Spaulding's claim against Mr. Mayorkas.

### III.

For the foregoing reasons, Defendant Alejandro Mayorkas's Motion to Dismiss [doc. # 16] for lack of subject matter jurisdiction is GRANTED, and the claim against Mr. Mayorkas is dismissed, but without prejudice to Mr. Spaulding re-filing it after exhausting his administrative remedies.  The claim against Defendant Brian Figeroux remains.

IT IS SO ORDERED.

/s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 18, 2010.**